IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHARON GRISWOLD,<br>Plaintiff,<br><br>v.<br><br>DREXEL UNIVERSITY,<br><br>Defendant. | )<br>)<br>) Civil Action No. 2:20-cv-2227<br>)<br>) JURY TRIAL DEMANDED<br>)<br>)<br>) |

**DEFENDANT DREXEL UNIVERSITY'S ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT AND COUNTERCLAIM**

Defendant Drexel University ("Drexel"), by and through its undersigned attorneys, hereby submits the following Answer and Affirmative Defenses to Plaintiff Sharon Griswold's ("Plaintiff") Complaint:

**NATURE OF THE ACTION**[1]

1. Drexel denies that Plaintiff is entitled to any relief or damages. Further, the allegations in this Paragraph are legal conclusions to which no response is required. To the extent the allegations require a response, they are denied.

2. Denied as stated. It is admitted only that Plaintiff was a founder and Director of the Master of Science in Medical and Health Simulation Program (the "Program") at Drexel and that Plaintiff assisted in recruiting faculty members and worked in collaboration with other faculty members, some of whom designed their own courses, and some of whom worked with Plaintiff to develop certain courses for the Program. Drexel is without sufficient information to admit or deny the remaining allegations in this Paragraph, and the remaining allegations in this Paragraph are denied.

---

[1] Drexel incorporates the headings from Plaintiff's Complaint for each of reference only.

3. Denied as stated. It is admitted that on October 29, 2019, Drexel placed Plaintiff on administrative leave pending the outcome of an investigation that was initiated in reference to a complaint filed against Plaintiff with Drexel Public Safety and the Department of Human Resources for a possible University policy violation. By way of further response, the complaint was filed against Plaintiff in the fall of 2019 after Plaintiff threatened to burn down the building where classes for the Program were held. It is also admitted that Drexel did not renew Plaintiff's contract in January 2020 and that Drexel is continuing to teach courses to students enrolled in the Program. The remaining allegations in this Paragraph are legal conclusions to which no response is required. To the extent the allegations require a response, they are denied.

## THE PARTIES

4. Admitted upon information and belief.

5. Admitted.

## JURISDICTION AND VENUE

6. Denied as a conclusion of law, except that Drexel does not contest this Court's subject matter jurisdiction.

7. Denied as a conclusion of law, except that Drexel does not contest this Court's personal jurisdiction over Drexel.

8. Denied as a conclusion of law, except that Drexel does not contest venue.

## FACTUAL BACKGROUND

## DR. GRISWOLD AND CREATION OF THE MSMS PROGRAM

9. It is admitted only that Plaintiff was a professor of Emergency Medicine at Drexel and had a secondary appointment as Professor of Anesthesia and Perioperative Care at

Drexel. The remaining allegations about Plaintiff's educational background are admitted upon information and belief. Drexel is without sufficient information to admit or deny the allegations related to Plaintiff's reputation and clinical experience, and those allegations are therefore denied.

        10.     Admitted upon information and belief.

        11.     Admitted.

        12.     Denied as stated. It is admitted that the Program was founded at Drexel under the direction of Plaintiff as a degree-granting and tuition-yielding education program and that the Program was approved by the Drexel Faculty Senate on August 8, 2013 and launched in August 2014 and has graduated four cohorts to date. It is denied that students are admitted to the Program on a rolling basis. By way of further response, Drexel stopped admitting students to the Program in 2019. The remaining allegations are denied.

        13.     Denied as stated. It is admitted that the Program was founded at Drexel under the direction of Plaintiff starting in 2012. By way of further response, Plaintiff also worked in collaboration with other faculty members to develop the Program, some of whom designed their own courses, and some of whom worked with Plaintiff to develop certain courses for the Program. The remaining allegations are denied.

        14.     Denied as stated. It is admitted that the Program is an experiential learning program that offers training in healthcare simulation education and research and that Plaintiff assisted with recruiting faculty to teach in the Program. It is also admitted that students can earn either a master's degree or a certificate through the Program and that the curriculum

includes a variety of required and elective courses which are mostly offered online. The remaining allegations are denied.

15. Admitted except that "Biostatistics and Health Care Literature" is called "Biostatistics in Healthcare Literature."

16. Admitted except it is denied that "Simulation Modalities" is an elective course and that the elective courses listed in this paragraph are the only electives available to students. By way of further response, students can select from a list of electives to reach the required number of degree credits, including but not limited to, the following electives: Interprofessional Education, Patient Safety and Simulation, Fundamentals of Simulation Program Administration, Adult Learning in Healthcare, and MSMS Independent Study.

17. Denied as stated. It is admitted only that the Program offers advanced training and education to healthcare professionals using simulation based methodology to bring a new level of standards and rigor in addition to creating new leaders to help shape the future of simulation education. The remaining allegations are denied.

18. Denied as stated. It is admitted only that there are very few simulation-based medical education programs in the country, that Drexel has a strong reputation in the field, and that the Program provided good opportunities for its graduates. Drexel is without sufficient information to admit or deny the remaining allegations, and they are therefore denied.

**DEVELOPMENT OF COURSES IN THE MSMS PROGRAM**

19. Denied as stated. It is admitted that Plaintiff worked in collaboration with other faculty members, some of whom designed their own courses, and some of whom worked with Plaintiff to develop certain courses for the Program, and that courses are sometimes

modified.  It is also admitted that Plaintiff taught classes from the beginning of the Program until the Fall of 2019 and that her contract was not renewed in January 2020.  It is further admitted that on October 29, 2019, Drexel placed Plaintiff on administrative leave pending the outcome of an investigation that was initiated in reference to a complaint filed against Plaintiff with Drexel Public Safety and the Department of Human Resources for a possible University policy violation.  By way of further response, the complaint was filed against Plaintiff in the fall of 2019 after Plaintiff threatened to burn down the building where classes for the Program were held.  The remaining allegations in this Paragraph are denied.

20. Denied as stated.  It is admitted only that the Program contained course offerings, employing a number of modalities, that courses were offered online in addition to several week-long in-person sessions, and that the Program's Capstone projects and independent study courses are highly specialized.  The remaining allegations are denied.

21. It is admitted only that the three courses described in this Paragraph were three course offerings in the Program.  The remaining allegations in this Paragraph are denied.

22. To the extent the allegations in this Paragraph purport to describe portions of Drexel's Copyright Policy, Drexel denies Plaintiff's description and refers to the document for its contents.  The remaining allegations in this Paragraph are denied.

23. To the extent the allegations in this Paragraph purport to describe portions of Drexel's Copyright Policy, Drexel denies Plaintiff's description and refers to the document for its contents.  The remaining allegations in this Paragraph are denied.

24. To the extent the allegations in this Paragraph purport to describe portions of Drexel's Intellectual Property Policy, Drexel denies Plaintiff's description and refers to the document for its contents. The remaining allegations in this Paragraph are denied.

25. To the extent the allegations in this Paragraph purport to describe portions of Drexel's Intellectual Property Policy, Drexel denies Plaintiff's description and refers to the document for its contents. The remaining allegations in this Paragraph are denied.

26. To the extent the allegations in this Paragraph purport to describe portions of Drexel's Intellectual Property Policy, Drexel denies Plaintiff's description and refers to the document for its contents. The remaining allegations in this Paragraph are denied.

27. Denied. The allegations of this Paragraph are conclusions of law to which no response is required and, accordingly, are denied. By way of further response, to the extent the allegations in this Paragraph purport to describe an exhibit Plaintiff attached to the Complaint, Drexel denies Plaintiff's description and refers to the document for its contents.

28. Denied. The allegations of this Paragraph are conclusions of law to which no response is required and, accordingly, are denied. By way of further response, to the extent the allegations in this Paragraph purport to describe an exhibit Plaintiff attached to the Complaint, Drexel denies Plaintiff's description and refers to the document for its contents.

29. Denied. The allegations of this Paragraph are conclusions of law to which no response is required and, accordingly, are denied. By way of further response, to the extent the allegations in this Paragraph purport to describe an exhibit Plaintiff attached to the Complaint, Drexel denies Plaintiff's description and refers to the document for its contents.

30. Denied.

## DR. GRISWOLD'S SEPARATION FROM DREXEL AND
## DREXEL'S INFRINGING USE OF DR. GRISWOLD'S REGISTERED COURSES

31. Denied as stated. It is admitted that on October 29, 2019, Drexel placed Plaintiff on administrative leave pending the outcome of an investigation that was initiated in reference to a complaint filed against Plaintiff with Drexel Public Safety and the Department of Human Resources for a possible University policy violation. By way of further response, the complaint was filed against Plaintiff in the fall of 2019 after Plaintiff threatened to burn down the building where classes for the Program were held. It is also admitted that other faculty members continued to teach certain courses offered in the Program. The remaining allegations in this Paragraph are denied.

32. Denied.

33. To the extent the allegations in this Paragraph purport to describe a letter sent to Drexel by Plaintiff's counsel, Drexel denies Plaintiff's description and refers to the document for its contents. The remaining allegations in this Paragraph are denied.

34. To the extent the allegations in this Paragraph purport to describe a letter sent to Drexel by Plaintiff's counsel, Drexel denies Plaintiff's description and refers to the document for its contents. The remaining allegations in this Paragraph are denied.

35. Denied as stated. Drexel admits that there was a conversation between Plaintiff's counsel and Drexel but denies Plaintiff's characterization of that conversation.

36. To the extent the allegations in this Paragraph[2] purport to describe portions of Drexel's Intellectual Property Policy, Drexel denies Plaintiff's description and refers to the document for its contents. The remaining allegations in this Paragraph are denied.

37. To the extent the allegations in this Paragraph purport to describe portions of Drexel's Intellectual Property Policy, Drexel denies Plaintiff's description and refers to the document for its contents. The remaining allegations in this Paragraph are denied.

38. To the extent the allegations in this Paragraph purport to describe correspondence from Plaintiff's counsel, Drexel denies Plaintiff's description and refers to the document for its contents. To the extent the allegations in this Paragraph purport to describe a conversation between Plaintiff's counsel and Drexel, Drexel denies Plaintiff's characterization of that conversation. The remaining allegations in this Paragraph are legal conclusions to which no response is required. To the extent the allegations require a response, they are denied.

39. To the extent the allegations in this Paragraph purport to describe correspondence from Plaintiff's counsel, Drexel denies Plaintiff's description and refers to the documents for their contents. To the extent the allegations in this Paragraph purport to describe a conversation between Plaintiff's counsel and Drexel, Drexel denies Plaintiff's characterization of that conversation. The remaining allegations in this Paragraph are legal conclusions to which no response is required. To the extent the allegations require a response, they are denied.

40. To the extent the allegations in this Paragraph purport to describe correspondence from Plaintiff's counsel, Drexel denies Plaintiff's description and refers to the

---

[2] Due to a presumed typo in Plaintiff's Complaint, the allegations in this paragraph were separated into paragraph 36 and 37. Drexel has provided separate responses to both paragraphs 36 and 37.

documents for their contents.  To the extent the allegations in this Paragraph purport to describe a conversation between Plaintiff's counsel and Drexel, Drexel denies Plaintiff's characterization of that conversation.  The allegations in this Paragraph are legal conclusions to which no response is required.  To the extent the allegations require a response, they are denied.

41.   Denied.

42.   Denied as stated.  It is admitted only that after Drexel placed Plaintiff on administrative leave, Griswold took several steps to retaliate against Drexel, seeking to sabotage its ability to continue teaching courses in the Program by interfering with Drexel's contracts with other faculty members in the Program.  By way of further response, even though Plaintiff was prohibited from contacting faculty members while on administrative leave, Plaintiff contacted Mr. Pribaz and other faculty members in the Program to threaten them not to teach at Drexel and to try to disrupt and/or terminate their relationship with Drexel and the Program.  To the extent the allegations in this Paragraph purport to describe a written document, Drexel denies Plaintiff's description and refers to the document for its contents.  The remaining allegations are denied.

43.   Denied as stated.  It is admitted only that Drexel asked instructors to continue their assigned teaching responsibilities in order to allow students in the Program to continue progression towards their degrees and informed instructors that they would be indemnified under Drexel's Legal Defense and Indemnification of University Employees Policy if Plaintiff filed suit against them.  The remaining allegations are denied.

44.   Denied.

45. Drexel denies that Plaintiff is entitled to any relief or damages. Further, the allegations in this Paragraph are legal conclusions to which no response is required. To the extent the allegations require a response, they are denied.

46. Drexel denies that Plaintiff is entitled to any relief or damages. Further, the allegations in this Paragraph are legal conclusions to which no response is required. To the extent the allegations require a response, they are denied.

47. Drexel denies that Plaintiff is entitled to any relief or damages. Further, the allegations in this Paragraph are legal conclusions to which no response is required. To the extent the allegations require a response, they are denied.

48. Drexel denies that Plaintiff is entitled to any relief or damages. Further, the allegations in this Paragraph are legal conclusions to which no response is required. To the extent the allegations require a response, they are denied.

49. Drexel denies that Plaintiff is entitled to any relief or damages. Further, the allegations in this Paragraph are legal conclusions to which no response is required. To the extent the allegations require a response, they are denied.

50. Drexel denies that Plaintiff is entitled to any relief or damages. Further, the allegations in this Paragraph are legal conclusions to which no response is required. To the extent the allegations require a response, they are denied.

## COUNT I - FEDERAL COPYRIGHT INFRINGEMENT

*Under 17 U.S.C. § 501*

51. Drexel incorporates each of its responses to the paragraphs above as if fully set forth herein.

52. To the extent the allegations in this Paragraph purport to describe exhibits Plaintiff attached to the Complaint, Drexel denies Plaintiff's description and refers to those documents for their contents. The remaining allegations in this Paragraph are legal conclusions to which no response is required. To the extent the allegations require a response, they are denied.

53. The allegations in this Paragraph are legal conclusions to which no response is required. To the extent the allegations require a response, they are denied.

54. The allegations in this Paragraph are legal conclusions to which no response is required. To the extent the allegations require a response, they are denied.

55. The allegations in this Paragraph are legal conclusions to which no response is required. To the extent the allegations require a response, they are denied.

56. The allegations in this Paragraph are legal conclusions to which no response is required. To the extent the allegations require a response, they are denied.

57. The allegations in this Paragraph are legal conclusions to which no response is required. To the extent the allegations require a response, they are denied.

58. The allegations in this Paragraph are legal conclusions to which no response is required. To the extent the allegations require a response, they are denied.

## **AFFIRMATIVE DEFENSES**

1. The Complaint fails to state facts sufficient to constitute a cause of action against Drexel.

2. Drexel's alleged actions, if any, were not the cause in fact or the proximate cause of any harm to Plaintiff.

3. Plaintiff has not suffered any damages as a result of any actions taken by Drexel.

4. Plaintiff's alleged damages are barred to the extent they are speculative in nature.

5. Drexel's conduct was non-infringing and not a willful infringement of copyright.

6. Any action on the part of Drexel was permissible under Drexel's Intellectual Property Policy and/or Copyright Policy.

7. Plaintiff's claims are barred because Plaintiff's alleged protected copyrights are invalid, as they only consist of ideas or expressions that are not protectable.

8. Plaintiff's claims are barred, in whole or in part, to the extent that any material copied was not protected expression.

9. Plaintiff's claims are barred, in whole or in part, to the extent they are based on the alleged infringement of derivative works for which Plaintiff's use of pre-existing material was unlawful.

10. Plaintiff's claims for relief are barred by the "Fair Use Doctrine" pursuant to Section 107 of the Copyright Act, 17 U.S.C. § 107.

11. Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, laches, and/or estoppel.

12. Plaintiff's claims are barred by unclean hands.

13. Drexel reserves the right to assert such additional defenses as are warranted in the event that discovery or further investigation indicates that such defenses would be appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Defendant Drexel University respectfully demands judgment in its favor and against Plaintiff, that the Court award Drexel its attorneys' fees and costs associated with defending this action, and that the Court award whatever additional relief it deems just and equitable.

## COUNTERCLAIM AGAINST SHARON GRISWOLD

Pursuant to Federal Rule of Civil Procedure 13, Defendant/Counter-Plaintiff Drexel University ("Drexel"), by and through its undersigned attorneys, brings this counterclaim against Plaintiff/Counter-Defendant Sharon Griswold ("Griswold") and states as follows:

## THE PARTIES

1. Drexel is a Pennsylvania non-profit educational corporation with its principal place of business at 3141 Chestnut Street, Philadelphia, PA 19104.

2. Griswold is an individual with an address of 1170 Pinetown Road, Fort Washington, PA 19034.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the Counterclaim pursuant to 28 U.S.C. § 1367.

**FACTS**

4. Drexel is a highly-regarded medical school that offers innovative educational programs to students pursuing doctoral degrees, master's degrees, and various graduate-level certificates.

5. Drexel offers a Master of Science Program in Medical and Healthcare Simulation (the "Program"). The Program is designed to provide academic training, practical simulation, and research opportunities to graduate-level students typically within a two-year time frame.

6. Students who enroll in the Program agree to pay Drexel tuition in exchange for taking classes with the opportunity to earn credits toward a degree in that Program.

7. On July 10, 2007, Griswold accepted a position as Associate Professor at Drexel University College of Medicine and signed an employment contract.

8. While employed by Drexel, Griswold taught courses in the Program, but she also worked in collaboration with other faculty members, some of whom designed their own courses and some of whom worked with Griswold to develop certain courses.

9. Griswold became Director of the Program in 2012.

10. Drexel entered into contracts with several other faculty members to teach various courses in the Program.

11. On July 18, 2019, Drexel informed Griswold that her employment with Drexel would end on January 14, 2020 due to the pending closure of Hahnemann University Hospital.

12. In the fall of 2019, Griswold threatened to burn down the building in which the Program's classes were held. An internal investigation was initiated in reference to a complaint

subsequently filed against Griswold with Drexel Public Safety and the Department of Human Resources for a possible University policy violation.

13. On October 29, 2019, Drexel placed Griswold on administrative leave pending the outcome of the investigation.

14. Drexel prohibited Griswold from returning to campus and from contacting any staff, program faculty, or students during her administrative leave.

15. Angry that Drexel placed her on administrative leave, Griswold then took several steps to retaliate against Drexel, seeking to sabotage its ability to continue teaching courses in the Program by interfering with Drexel's contracts with other faculty members in the Program.

16. Specifically, within weeks of being placed on administrative leave, in or around December 2019, Griswold contacted several of the Program's faculty members and requested that they assign their intellectual property rights in courses that were part of the Program to Griswold.

17. Griswold apparently provided these faculty members with a pre-drafted "Assignment of Copyright." The purported assignments do not appear to be supported by any consideration.

18. Griswold convinced a number of the Program's faculty members to sign the documents.

19. Griswold then reached out to Drexel, told them that she had procured assignments from these other faculty members and demanded that Drexel not only not use her own course material, but also that it not use any of the course material provided by these other professors with whom Drexel had contracted to teach in the Program.

20. Upon information and belief, Griswold's sole purpose in attempting to have other faculty members assign intellectual property rights to her was to lock up the Program, sabotage its existing and prospective faculty relationships, and prevent Drexel from fulfilling its obligations to students already enrolled in the Program.

21. Griswold also contacted several of the Program's faculty members directly in January 2020 to threaten them not to teach at Drexel, and to try and disrupt and/or terminate their relationship with Drexel and the Program.

22. Griswold contacted these faculty members in December 2019 and January 2020 even though she was prohibited from contacting other staff and faculty members while on administrative leave.

23. More specifically, on or about January 24, 2020, Griswold sent an email with the subject line "cease and desist use of Simulation Administration, Debriefing and Practicum Three Courses" to the "Master of Science in Medical and Healthcare and Graduate Certificate Program Faculty," including but not limited to the following Drexel employees who taught courses in the Program: Tony Errichetti, Annemarie Monachino, Roberta Hales, Matthew Charnetski, Paul Pribaz, and Jeffrey Barsuk.

24. As a result of Plaintiff's threats, several faculty members refused to teach courses in the Program, including for the Spring 2020 term, which they had been contractually engaged to teach. Plaintiff's actions thus had the direct, foreseeable and intended effect of disrupting those relationships.

25. In fact, as far as Drexel is aware, the only reason Program faculty members refused to continue teaching was because of communications from Griswold.

26. As a result of these faculty members' refusal to continue teaching in the Program, Drexel was forced to quickly find, interview, and hire new faculty members in order to continue the Program and to allow the students already enrolled in the Program to complete the coursework required to graduate. This caused Drexel substantial damages.

27. Upon information and belief, Griswold contacted students and/or former students after she was placed on administrative leave despite being instructed not to do so.

28. After Griswold was placed on administrative leave, Drexel received several emails beginning in January 2020 from current and former students of the Program expressing concern that Griswold was no longer in charge of the Program.

29. The emails used very similar phrasing and urged Drexel to take into account the impact Griswold's absence would have on the Program's future.

30. Upon information and belief, Griswold improperly interfered with Drexel's existing and prospective contracts in other ways, and Drexel anticipates ascertaining the scope and breadth of Griswold's improper conduct during discovery.

## COUNT ONE

### Tortious Interference with Existing Contracts

31. Drexel repeats and re-alleges each and every allegation in this Counterclaim as though fully set forth herein.

32. Drexel had existing and enforceable contractual relationships with faculty members employed to teach courses in the Program.

33. With the intention of harming those existing contractual relationships, Griswold took purposeful actions to interfere with those relationships, specifically seeking to bar those

-17-

faculty members from performing their teaching obligations by procuring assignments of intellectual property rights, and then threatening those professors with legal actions if they fulfilled their contractual obligations to Drexel.

34. As a result of Griswold's actions, several Drexel faculty members refused to fulfill the obligations of their employment contracts and continue teaching in the Program.

35. There was no privilege or other justification for Griswold's actions.

36. As a result of Griswold's actions, Drexel suffered substantial damages. These include, but are not limited to, the costs and expenses associated with finding, interviewing, and hiring new faculty members so that it could continue teaching the students who were already enrolled in the Program.

WHEREFORE, Drexel requests the Court enter judgment in its favor and award damages, interest, costs, punitive damages, and any further relief this Court deems just and equitable.

## COUNT TWO

### Tortious Interference with Prospective Relations

37. Drexel repeats and re-alleges each and every allegation in this Counterclaim as though fully set forth herein.

38. Drexel had prospective contractual relationships with faculty members that it planned to employ to teach courses in the Program.

39. With the intention of harming those prospective contractual relationships, Griswold took purposeful actions to interfere with those relationships, specifically seeking to bar those faculty members from performing their teaching obligations in the future by procuring

assignments of intellectual property rights, and then threatening those professors with legal actions if they fulfilled their contractual obligations to Drexel.

40. As a result of Griswold's actions, several individuals refused to enter into new contracts with Drexel to teach in the Program.

41. As a result of Griswold's actions, Drexel suffered substantial damages. These include, but are not limited to, the costs and expenses associated with finding, interviewing, and hiring new faculty members so that it could continue teaching the students who were already enrolled in the Program.

WHEREFORE, Drexel requests the Court enter judgment in its favor and award damages, interest, costs, punitive damages and any further relief this Court deems just and equitable.

Dated: October 5, 2020

Respectfully submitted,

*/s/ Michael E. Baughman*
Michael E. Baughman, Esq.
Paul J. Kennedy, Esq.
Erica H. Dressler, Esq.
TROUTMAN PEPPER HAMILTON SANDERS LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
215.981.4000
Michael.Baughman@Troutman.com
Paul.Kennedy@Troutman.com
Erica.Dressler@Troutman.com

*Attorneys for Defendant Drexel University*

**CERTIFICATE OF SERVICE**

      I, Michael E. Baughman, hereby certify that on October 5, 2020, I filed a true and correct copy of the foregoing Defendant Drexel University's Answer and Affirmative Defenses to Complaint and Counterclaim with the clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the parties of record.

                                                */s/ Michael E. Baughman*
                                                Michael E. Baughman